UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **AMY ROLLS, on behalf of her minor child, A.R.** | : | **DOCKET NO. 2:18-cv-00188** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **PACKAGING CORPORATION OF AMERICA, ET AL** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court are a Motion to Remand and Motion for Attorney's Fees [doc. 9] and a Motion for Leave to File First Amended Complaint [doc. 11] filed by plaintiff Amy Rolls, on behalf of her minor child A.R. Defendant, Packaging Corporation of America (hereafter "PCA"), opposes the Motion to Remand [doc. 14] and the Motion to Amend. Doc. 15.

These matters have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For the reasons stated below, **IT IS RECOMMENDED** that the Motion Remand and Motions for Attorney's Fees and Motion to Amend [docs. 9, 11] be **DENIED** and that all claims asserted against Timothy Wohlers be **DISMISSED WITHOUT PREJUDICE**.

I.
BACKGROUND

This cases arises from the death of William Rolls, Jr. ("Rolls"), plaintiff's husband and A.R.'s father, on February 8, 2017, in the explosion of a Foul Condensate tank ("FC tank") located at the paper mill owned by PCA in DeRidder, Louisiana. Doc. 1, att. 7, pp. 1, 15–17. According to the petition, Rolls was a welder whose employer, Elite Welding, LLC ("Elite") was contracted

by PCA to conduct repairs, including welding or "hot work," at the mill during its annual maintenance outage. *Id.* at p. 15. Plaintiff states that the FC tank stored highly flammable non-condensable gases ("NCGs"), a byproduct of mill operations. *Id.* at pp. 7–9. She maintains that PCA employees issued a permit for hot work to be done near the FC tank without warning that it contained NCGs. *Id.* at p. 16. The FC tank allegedly exploded when hot work began nearby, causing the death of Rolls. *Id.* at p. 17.

Plaintiff, a Louisiana resident, filed suit in the 36th Judicial District Court, Beauregard Parish, Louisiana on January 16, 2018. *Id.* at p. 1. She named as defendants PCA, a corporation with citizenship in Delaware and Illinois, and Timothy Wohlers, a Louisiana citizen whom she alleges was a supervisor with responsibility for the safe operation of the FC tank. *Id.* at p. 2.

On February 14, 2018, PCA removed the action to this court on the basis of diversity jurisdiction. Doc. 1. Although it acknowledges that diversity would be lacking because plaintiff and Wohlers are both Louisiana citizens, PCA asserts that the citizenship of Wohlers should be disregarded for purposes of determining jurisdiction because he was improperly joined. *Id.*

Plaintiff filed the instant motion to remand on March 14, 2018, asserting that she stated a valid cause of action against Wohlers and requesting an award of costs and fees associated with removal. Five days later, she moved the court for leave to file an amended complaint, seeking to add James Machine Works, LLC (hereafter "JMW"). Doc. 11, p. 2. She asserts that JMW, "a Louisiana limited liability company," manufactured or sold the FC tank that exploded. *Id.* PCA opposes the motion on grounds that plaintiff improperly pleaded JMW's citizenship and that amendment would be futile. Doc. 15, pp. 6, 8.

## II.
## LAW & ANALYSIS

Any civil action brought in a State court of which the district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a). District courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1). The diversity provisions of 28 U.S.C. § 1332(a)(1) require complete diversity among the parties. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). The removing party bears the burden of showing that removal was procedurally proper and that federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

### A. Motion to Remand

#### 1. Improper Joinder of Timothy Wohlers

Plaintiff moves the court to remand this matter to the Louisiana state court because Wohlers was properly joined to the suit and his presence destroys diversity. Doc. 9, p. 1.

If removal is based on a claim that a non-diverse party has been improperly joined, then the removing party must establish either "actual fraud in the pleading of jurisdictional facts" or an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). Only the latter method is relevant here, because no fraud is alleged. Thus the relevant question is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* The movant is therefore required to put forth evidence "that would negate a possibility of liability on the part of [the nondiverse defendant]." *Davidson v.*

*Georgia-Pacific, LLC*, 819 F.3d 758, 767 (5th Cir. 2016) (quoting *Travis*, 326 F.3d at 650) (alterations in original). All contested issues of substantive fact and ambiguities in the controlling state law must be resolved in the plaintiff's favor. *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995).

In order to assess the plaintiff's possibility of recovery against the non-diverse defendant, the court conducts "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 574. This inquiry "depends upon and is tied to the factual fit between the [plaintiff's] allegations and the pleaded theory of recovery." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 574.

In some cases, however, the analysis should advance past the standards of Rule 12(b)(6). *Id.* at 573. This is appropriate where the plaintiff "has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." *Id.* "In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* The summary inquiry is only appropriate "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant," and should not proceed into a resolution of the merits. *Id.* at 573–74. On a summary inquiry into improper joinder, the court must still resolve all ambiguities in the plaintiff's favor. *Travis*, 326 F.3d at 648–49.

In this diversity case, the court applies state law to evaluate the sufficiency of the plaintiff's claims. *Henry v. O'Charleys, Inc.*, 861 F.Supp.2d 767, 771 (W.D. La. 2012). Under Louisiana tort law, an employee is personally liable to a third person if the employee breached a personal duty owed to that person. *Freeman v. Wal-Mart Stores, Inc.*, 775 F.Supp. 208, 210 (W.D. La. 1991).

Courts look to the factors set forth by the Louisiana Supreme Court in *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973), to determine if there is a basis for an employee's personal liability. *Id.* Under *Canter*, four factors must be satisfied before personal liability can be imposed:

> (1) The employer must owe a duty of care to the third person, the breach of which caused the damages for which recovery is sought.
>
> (2) The duty was delegated by the employer to the particular employee.
>
> (3) The employee breached the duty through his own personal fault.
>
> (4) Personal liability cannot be imposed simply because of general administrative responsibilities; instead it must result from a personal duty to the plaintiff that was not properly delegated to another employee.

*Canter*, 283 So.2d at 721 (*superseded by statute on other grounds as stated in Walls v. Am. Optical Corp.*, 740 So.2d 1262, 1265 (La. 1999)). Because the existence of a valid claim against Wohlers depends on certain discrete and undisputed facts included in the parties' declarations but omitted from the complaint, we exercise our discretion to pierce the pleadings in this matter.

Plaintiff maintains that she set forth a valid claim because Wohlers was delegated personal responsibility "for operation, maintenance and safety of the tank," which included ordering that it be purged of NCGs. Doc. 9, att. 1, p. 9. She alleges that Wohlers had a personal duty to the welders, which he breached when he chose not to purge the FC tank and failed to warn the welders of the hazard, despite knowing that it contained dangerous levels of NCGs and was likely to explode. *Id.* at pp. 18, 23. In support, plaintiff attaches the declaration of Stephanie Partridge, who says that at the time of the incident she was an assistant superintendent working for Wohlers. Doc. 9, att. 3, pp. 2–3. She states that Wohlers had "the duty to maintain, operate and ensure the safety of the tank that exploded." *Id.* at p. 3. Partridge avers that Wohlers admitted to her after the explosion that he made the "ultimate decision not to drain and clean the tank" because the tank "was not due to be cleaned" and the cleaning was prohibitively expensive. *Id.*

PCA opposes remand, arguing that Rolls fails to state a claim against Wohlers. Doc. 14, p. 6. It asserts that plaintiff's allegations are conclusory and devoid of factual support. *Id.* at p. 16. Attached to PCA's memorandum in opposition is a declaration made by Wohlers in which he denies the allegations in the petition. Doc. 14, att. 1.

The parties contest the second, third, and fourth *Canter* factors. Concerning the second factor, PCA contends that plaintiff failed to make any factual allegations that Wohlers was ever delegated any personal responsibility over the FC tank. Doc. 14, p. 16. In his declaration, Wohlers likewise refutes the claim that any personal duty was ever delegated to him. Doc. 14, att. 1, ¶ 5(A)–(C). However, Partridge testifies that "Wohlers was the Superintendent with the duty to maintain, operate and ensure safety of the tank that exploded." Doc. 9, att. 3, p. 2. Partridge's declaration flatly contradicts Wohlers's statement. Resolving all contested issues of fact in plaintiff's favor, we find it plausible that Wohlers had been delegated a duty over the FC tank. Thus, plaintiff satisfies the second *Canter* factor.

As to the third factor, PCA argues that Wohlers did not breach his duty because he was unaware that there was any hazardous condition. Doc. 14, p. 21. According to his declaration, Wohlers was not at the mill at the time of the explosion and did not know that any hot work was scheduled near the FC tank on that day. Doc. 14, att. 1, pp. 1, 3–4. He further states that he had no prior knowledge that the FC tank was likely to explode. *Id.* at p. 16. Partridge's declaration does not refute these statements.

Plaintiff contends that Wohlers breached his duty regardless of whether he was at the mill when the explosion occurred because he knew that the FC tank should have been purged prior to performing hot work nearby. Doc. 19, pp. 4–5. To this end he relies on a report prepared by the U.S. Chemical Safety and Hazard Investigation Board following a previous explosion at another

PCA facility. *Id.* at p. 3 (citing doc. 1, att. 7, ¶¶ 81, 87, 92). In the report, the Board provided safety guidelines concerning welding around flammable materials. *Id.* As cited in the complaint, these guidelines generally warn about conducting effective gas monitoring and keeping safeguards in place for hot work done in the facility. They are not enough to overcome Wohlers's representations that he was unaware of and did not authorize the work scheduled on February 8, 2017, when he was not even at the facility, or to show that there was any other indication within his awareness that the tank should have been drained and cleaned prior to the explosion when, as he states in his own declaration, it was not due for cleaning. Accordingly, the plaintiff cannot satisfy the third *Canter* factor with respect to Wohlers.

Because plaintiff has not sufficiently alleged that Wohlers breached any personal duty, we need not address the final *Canter* factor. PCA has met its burden of proving that plaintiff has not stated a plausible claim against Wohlers individually. Therefore, plaintiff's motion to remand should be denied.

### 2. Request for attorney fees and costs.

The decision to grant or deny attorney's fees is within the discretion of the court and an award of such fees and costs is not automatic under 28 U.S.C. § 1447(c). *Valdes v. Wal–Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000). The Fifth Circuit has stated that attorney's fees "should only be awarded if the removing defendant lacked 'objectively reasonable grounds to believe the removal was legally proper.'" *Hornbuckle v. State Farm Lloyds,* 385 F.3d 538 (5th Cir. 2004) (quoting *Valdes*, 199 F.3d at 293). Because defendants have successfully argued their case for removal, plaintiffs' request for attorney fees and costs unwarranted. Accordingly, it is denied.

### B. Motion to Amend

On March 19, 2018, plaintiff moved the court for leave to file an amended complaint through which he seeks to add James Machine Works, LLC ("JMW"). Doc. 11, p. 2. She asserts that JMW, "a Louisiana limited liability company," manufactured or sold the FC tank. *Id.*

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Leave to amend is within the trial court's discretion but should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, this guidance by no means renders leave to amend automatic. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006). Post-removal amendments that would destroy diversity are subjected to closer scrutiny than ordinary amendments. *Parish Disposal Indus., LLC v. BFI Water Svcs., LLC*, 2014 WL 2207870, at *4 (W.D. La. May 27, 2014) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)). In a case removed to federal court on the basis of diversity, a plaintiff seeking to amend her complaint must specifically allege the domicile of each proposed defendant. *McCright v. Smith & Nephew, Inc.*, 2016 WL 797599, at *2 (W.D. La. Feb. 25, 2016). The Fifth Circuit has expressly held that "the citizenship of an LLC is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).

PCA argues that plaintiff failed to properly allege the citizenship of JMW's members and thus it cannot be determined whether amendment would destroy diversity. Doc. 15, pp. 6–7. In response plaintiff provides records from the Louisiana Secretary of State, showing that two individuals identified as members of JMW list addresses in Monroe, Louisiana. Doc. 18, att. 1. Therefore it appears that Rolls's claims of Louisiana citizenship for JMW are supported, despite

the defective allegations in the complaint, and we assume that the proposed amendment would destroy the court's diversity jurisdiction.

Under *Hensgens*, the court should consider the following factors when confronted with an amended pleading that would destroy diversity in a removed case: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether plaintiff has been dilatory in seeking amendment, (3) whether plaintiff will be significantly injured if amendment is not allowed, and (4) any other factors bearing on the equities. 833 F.2d at 1182.

### 1. Extent to which purpose of amendment is to defeat diversity

Under the first factor, courts consider both the timing of the proposed amendment and the validity of the claims. *Gallegos v. Safeco Ins. Co. of Indiana*, 2009 WL 4730570, at *3–*4 (S.D. Tex. Dec. 7, 2009). A plaintiff's request to add a nondiverse defendant shortly after removal may be viewed as evidence of his intent to defeat federal diversity jurisdiction. *Id.* at *4. On the other hand, the plaintiff's ability to state a valid claim against the nondiverse defendant is evidence that the principal purpose of his amendment is not to achieve remand. *Id.* Under the first *Hensgens* factor, the inquiry into the validity of the claim is more lenient than that triggered by a 12(b)(6) motion to dismiss. *Agyei v. Endurance Power Prods., Inc.*, 198 F.Supp.3d 764, 772 (S.D. Tex. 2016). The inquiry under *Hensgens* focuses on whether the claim is "facially valid;" in other words, "valid as a matter of law." *Id.* at 771; *see Mallery v. Becker*, 2014 WL 60327, at *2 (W.D. La. Jan. 7, 2014).

Here PCA maintains that the sole purpose of plaintiff's proposed amendment is to defeat diversity. It first alleges that the timing of the motion is "far from fortuitous," noting that the Motion for Leave to Amend was filed shortly after plaintiff's motion to remand. Doc. 15, p. 9. Plaintiff maintains that she did not discover the manufacturer of the tank until recently. Doc. 18,

p. 6. She also points out that the state court petition was only filed on January 18, 2018, and that discovery in this matter has not yet begun. *Id.*; *see* doc. 1, att. 7. In light of the brief amount of time that has passed since this suit was initiated, the timing of plaintiff's attempt at amendment is not sufficiently suspicious to weigh against her under a *Hensgens* analysis.

PCA's insufficient pleading contention is likewise unavailing. While plaintiff's use of cursory and formulaic allegations about JMW's liability for the design and/or manufacture of the FC tank might be insufficient under Rule 12(b) or 12(e) standards, this deficiency fails to show that the claims asserted face any significant legal obstacles. Accordingly, this factor weighs in favor of permitting amendment.

### 2. Whether plaintiff was dilatory in seeking amendment

As noted above, a short length of time passed between filing of the suit in state court in January 2018, removal of the suit in February 2018, filing of PCA's answer and affirmative defenses in March 2018, and plaintiff's motion for leave to amend filed April 3, 2018. Even if we rejected Rolls's explanation that he only learned of the need to look for other potentially liable parties through PCA's answer and affirmative defenses, the time that has passed between initiation of this suit and Rolls first seeking leave to amend is too brief for the court to find that he has been dilatory.

### 3. Extent to which plaintiff will be prejudiced if denied amendment

The court next considers the extent to which plaintiff will be injured if amendment is not allowed. The plaintiff maintains that she will be prejudiced by the inconveniences and risks associated with multiple litigation. Doc. 18, pp. 6–7. PCA asserts that there is no prejudice because the proposed claims against JMW are perempted under state law. Doc. 15, pp. 13–16.

Relevant to this factor, PCA provides a declaration from one of its directors, Bruce Kummerfeldt, who states that JMW was a contractor for PCA's predecessor, Boise Packaging & Newsprint. Doc. 15, att. 1, p. 1. Kummerfeldt recalls that JMW constructed the FC tank in 2000, and that Boise accepted and took possession of the tank in January 2001. *Id.* He states that the FC tank was permanently attached to the mill, and was incorporated in and became an integral part of the mil. *Id.* at 2.

Under the third *Hensgens* factor, courts have looked to (1) whether the already-named defendant would be able to satisfy a future judgment, and (2) the possibility of parallel state court proceedings. *Agyei*, 198 F.Supp.3d at 777. Courts have also used this factor to weigh the merits of the proposed claims, noting that "a plaintiff will not be 'significantly injured' by the denial of a clearly meritless claim." *Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 368 (5th Cir. 2010) (quoting *Hensgens*, 833 F.2d at 1182). A finding that the proposed claims are perempted under state law supports denial of leave to amend under the third *Hensgens* factor, even where the court does not find that the sole purpose of amendment is to defeat diversity or that the plaintiff was dilatory. *See id.* at 367–68, 372–73. The court is not limited to the allegations in the proposed amended complaint and may instead conduct a summary inquiry on the issue, akin to that permitted under *Smallwood*. *See id.* at 372–73 (upholding district court's allowance of limited discovery, where "discrete and undisputed facts" omitted from the complaint might show that the plaintiff could not recover against the in-state defendant). Accordingly, we first look to PCA's allegation of peremption and consider this issue dispositive.

Under Louisiana law, peremption refers to

> a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. Unlike the doctrine of prescription . . . peremption may not be renounced, interrupted, or suspended.

*Wilson*, 602 F.3d at 369 (citing La. C.C. art. 3461) (cleaned up). Per Louisiana Revised Statute § 9:2772, as it existed at the time the FC tank was installed,[1] a seven-year peremptive period applies to actions "against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovable, or improvements to immovable property."

Plaintiff asserts that JMW is not shielded by § 9:2772 because it is not a contractor. Doc. 18, pp. 8–9. We note that, since the decision on which plaintiff relies in *Tenneco Oil Co. v. Chicago Bridge & Iron Co.*, 495 So.2d 1317, 1321–23 (La. Ct. App. 4th Cir. 1986), the title of § 9:2772 has been amended to exclude explicit reference to "Contractor Liability." Acts 1999, No. 1024, § 1. Additionally, Kummerfeldt identified JMW as a contractor in his declaration and plaintiff provides nothing to contradict this, nothing in the plain language of § 9:2772. Accordingly, it appears plain that § 9:2772 would apply to JMW under either the narrow view argued by plaintiff or the wider view supported by the plain language of the statute.

Plaintiff also contends that PCA does not have standing to assert peremption on behalf of JMW. Louisiana Revised Statute § 9:2772(E), on which plaintiffs rely, provides only that the peremptive period "shall not be asserted **by way of defense** by a person in possession or control . . . of such an improvement at the time" the claim arises. This statute does not exclude a codefendant's ability to assert peremption as a means of showing improper joinder in order to defeat the plaintiffs' alleged attempts at forum manipulation.

---

[1] In *Wilson v. Martco Ltd. Partnership*, 2008 WL 11393109, *3 (W.D. La. Jul. 17, 2008), this court determined that it was appropriate to apply the version of the statute that existed when the allegedly defective improvement was installed instead of the version that existed when the accident occurred. Plaintiff does not challenge PCA's representation that the version of the statute amended in 2000 is the appropriate one to apply in this case, based on Boise taking possession of the tank in January 2001. Doc. 22, pp. 1–2.

Plaintiff also asserts generally that futility should not be found on the basis of an affirmative defense like peremption because it involves determination of "intensely factual issues" such as whether the FC tank "was an immovable or an improvement to immovable property." Doc. 18, p. 9. However, plaintiff has provided nothing to refute the Kummerfeldt declaration which supports the FC tank's status as an improvement to an immovable. See our discussion in *Delarosa v. PCA*, No. 2:18-cv-186 (W.D. La.).

Accordingly, PCA has shown based on facts undisputed by the parties that any claims against JMW based on the design and manufacture of the FC tank are perempted and that the motion for leave to amend is futile. Rolls's assertion that equitable factors favor amendment, because a state court suit against JMW would likely be dismissed for non-joinder of essential parties, is unavailing in light of the peremption finding. The motion for leave to amend must therefore be denied.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the Motion to Remand and Motion for Attorney's Fees [doc. 9] be **DENIED** and that all claims against defendant Timothy Wohlers be **DISMISSED WITHOUT PREJUDICE**. **IT IS FURTHER RECOMMENDED** that the Motion to Amend [doc. 11] be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon

grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE this 30th day of August, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE