**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **AMY ROLLS, ON BEHALF OF**<br>**THE MINOR CHILD ANZLEY ROLLS** | **CIVIL ACTION NO. 2:18-CV-00188** |
| | **JUDGE ROBERT S. SUMMERHAYS** |
| **VERSUS** | |
| | **MAGISTRATE JUDGE KATHLEEN** |
| **PACKAGING CORP. OF AMERICA,**<br>**INC., ET AL** | **KAY** |

**MEMORANDUM IN SUPPORT OF PACKAGING CORPORATION OF AMERICA'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff filed this negligence suit against Packaging Corporation of America ("PCA")

seeking recovery for claimed damages resulting from the death William Rolls, Jr. ("Rolls") on

behalf of Rolls' minor daughter. Rolls was killed as a result of an explosion at PCA's DeRidder,

Louisiana Mill ("Mill" or "DeRidder Mill") on February 8, 2017, ("DeRidder Incident") while

working as an employee of PCA's contractor, Elite Specialty Welding, LLC ("Elite"). Plaintiff is

barred from bringing the claims presented as PCA was Rolls' statutory employer at the time of

the DeRidder Incident. Consequently, the exclusive remedy provision of the Louisiana Workers

Compensation Act ("LWCA") bars such claims.

## TABLE OF CONTENTS

**Page**

RELEVANT FACTUAL BACKGROUND ...............................................................................1

LAW AND ARGUMENT ....................................................................................................5

I.      Legal Standards...................................................................................................5

        A.      Summary Judgment Standard ................................................................5

        B.      The Exclusive Remedy Provisions of the Louisiana Workers'
                Compensation Act...................................................................................7

II.     Plaintiff's Claims against PCA are Precluded by the Exclusivity Provisions of the
        LWCA ...................................................................................................................9

        A.      PCA is the Statutory Employer of Elite's Employees ...........................9

        B.      Elite's Work on the CCL was an Integral Part of, and Essential to, the
                Ability of PCA to Generate Goods, Products, and Services.................11

        C.      Plaintiffs have not Sufficiently Alleged any "Intentional Act" ...........12

CONCLUSION...................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ......................................................... 5

*Bazley v. Tortorich*,
    397 So.2d 475 (La. 1981) ....................................................................................................... 13

*Berthelot v. Murphy Oil, Inc.*,
    No. 09-4460, 2010 U.S. Dist. LEXIS 1140 (E.D. La. Jan. 7, 2010) ...................................... 11

*Blakely v. CITGO Petroleum Corp.*,
    737 F. Supp. 2d 599 (W.D. La. 2010) ................................................................................... 11

*Brumfield v. Hollins*,
    551 F.3d 322 (5th Cir. 2008) ................................................................................................... 5

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ..................................................... 5, 6

*Cole v. State, Dep't of Public Safety & Corrections*,
    825 So.2d 1134 (La. 2002) ..................................................................................................... 12

*Condrey v. Sun Trust Bank of Georgia*,
    431 F.3d 191 (5th Cir. 2005) ................................................................................................... 6

*Cortez v. Hooker Chemical and Plastics Corp.*,
    402 So.2d 249 (La.App. 4 Cir. 1981) .................................................................................... 14

*Dark v. Georgia-Pacific Corp.*,
    176 Fed. Appx. 569 (5th Cir. 2006) ...................................................................................... 12

*Davis v. Southern Louisiana Insulations*,
    539 So.2d 922 (La.App. 4 Cir. 1989) .................................................................................... 14

*Donahue v. Republic Nat'l Distrib. Co., LLC*,
    No. 16-13948, 2018 U.S. Dist. LEXIS 148080 (E.D. La. Aug. 30, 2018) .............................. 6

*Dycus v. Martin Marietta Corp.*,
    568 So.2d 592 (La.App. 4 Cir. 1990), *writ denied*, 571 So.2d 649 (La. 1990) ...................... 14

*Erwin v. Excello Corp.*,
    387 So.2d 1288 (La.App. 1 Cir. 1980), *writs denied*, 396 So.2d 1242 and 397 So.2d
    1363 (La. 1981) ..................................................................................................................... 14

*Everett v. Rubicon, Inc.*,
    938 So.2d 1032 (La. App. 1 Cir., 2006) ............................................................................... 11

*Guillory v. Domtar Indus., Inc.*,
    95 F.3d 1320 (5th Cir. 1996) ................................................................................................. 12

*Hodges v. The Mosaic Co.*,
    Civ. A. No. 05-5201, 2007 U.S. Dist. LEXIS 49065, 2007 WL 2008503 (E.D. La.
    July 6, 2007) .......................................................................................................................... 11

*Holliday v. B.E. & K. Constr. Co.*,
    563 So.2d 1333 (La.App. 3 Cir. 1990) .................................................................................. 14

*Hood v. South Louisiana Medical Center*,
    517 So.2d 469 (La.App. 1 Cir. 1987) .................................................................................... 14

*Iteld v. Four Corners Const., L.P.*,
    2012-1504 (La. App. 4 Cir. 6/5/13), So. 3d 702 ..................................................................... 9

*Jacobsen v. Southeast Distributors, Inc.*,
    413 So.2d 995 (La.App. 4 Cir. 1982), *writ denied*, 415 So.2d 953 (La. 1982) ....................... 14
*Johnson v. Tenn. Gas. Pipeline Co.*,
    99 F. Supp. 2d 755 (E.D. La. 2000) ................................................................... 11
*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) .......................................................................... 6
*Louque v. Scott Equip. Co., LLC*,
    212 So. 3d 1203 (La. App. 5 Cir. 2017) ........................................................... 6
*Lujan v. Nat. Wildlife Federation*,
    497 U.S. 871, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) ...................................... 6
*Minter v. Great American Insurance Co. of New York*,
    423 F.3d 460 (5th Cir. 2005) .......................................................................... 5
*Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*,
    520 F.3d 409 (5th Cir. 2008) ...................................................................... 5, 7
*Oliver v. Day & Zimmermann*,
    Civ. A. No. 05-3072, 2006 U.S. Dist. LEXIS 6647, 2006 WL 508047 (E.D. La. Feb.
    22, 2006) ................................................................................................ 11
*Rogers v. La. Dept. of Corrections*,
    43,000 (La.App. 2 Cir. 4/30/08), So. 2d 252 ...................................................... 12
*Schaefer v. Royal Prod. Co.*,
    No. 6:11-cv-00808, 2012 U.S. Dist. LEXIS 55361 (W.D. La. Apr. 19, 2012) ................ 11
*Snow v. Gulf States Utilities Co.*,
    492 So.2d 31 (La.App. 1 Cir. 1986), *writ denied*, 496 So.2d 349 (La. 1986) .................. 14
*Taylor v. Metropolitan Erection Co.*,
    496 So.2d 1184 (La.App. 5 Cir. 1986), *writ denied*, 497 So.2d 1388 (La. 1986) .............. 14
*Washburn v. Harvey*,
    504 F.3d 505 (5th Cir. 2007) .......................................................................... 5
*White v. Monsanto Co.*,
    585 So.2d 1205 (La. 1991) ............................................................................ 13
*Williams v. Gervais F. Favrot Co., Inc.*,
    573 So.2d 533 (La.App. 4 Cir. 1991), *writ denied*, 576 So.2d 49 (La. 1991) .................. 14
*Wright v. Excel Paralubes*,
    807 F.3d 730 (5th Cir 2015) ........................................................................... 8

**Statutory Authorities**
La. C.C. art. 2045. ........................................................................................... 9
La. C.C. art. 2046. ........................................................................................... 9
La. R.S. 23:1031 ............................................................................................. 7
La. R.S. 23:1032 .......................................................................................... 7, 12
La. R.S. 23:1061. ............................................................................................ 8

**Rules and Regulations**
Fed. R. Civ. P. 56(a) ........................................................................................ 5

**Exhibits**
Exhibit A, Declaration of Lori Smith .............................................. 1, 2, 3, 4, 10, 12
Exhibit B, Declaration of Bruce Kummerfeldt ......................................................... 1
Exhibit C, Declaration of Stacy Miller .............................................................. 10,12

## RELEVANT FACTUAL BACKGROUND

In October 2013, PCA acquired Boise Inc. and its subsidiaries, which included Boise Packaging and Newsprint, L.L.C. ("Boise"), a wholly owned subsidiary of Boise Inc., through a stock purchase.[1] The purchase resulted in PCA becoming the sole stockholder of Boise Inc. and obtaining control of Boise Inc. and its assets, including the Mill.[2] In the months leading up to the DeRidder Incident, day to day operations of the Mill were conducted at the direction of PCA management and carried out by PCA's employees with the assistance of Boise payroll employees. Boise was completely merged into PCA in June 2017.[3]

On the day of the DeRidder Incident, Rolls and several other Elite employees were involved in performing repairs to the Mill's Clean Condensate Line ("CCL"). Generally, the CCL is part of the Mill's piping system which allows PCA to collect evaporated condensate and reuse it for the Mill's processes. One purpose of the CCL is to facilitate cleaning and filling of the Mill's Foul Condensate Tank ("FCT"). Elite's workers were working on the portion of the CCL above the FCT when it exploded.

As a general matter, when a maintenance issue is identified at the Mill, a planner assigned to the area is notified.[4] The planner then reviews the requested work and prepares a work order if needed, and may request bids from contractors to determine the anticipated cost of the work.[5] Once anticipated costs are determined, the planner prepares a purchase requisition

---

[1] Exhibit B, Declaration of Bruce Kummerfeldt, ¶ 3.

[2] Exhibit B, Declaration of Bruce Kummerfeldt, ¶ 3.

[3] Exhibit B, Declaration of Bruce Kummerfeldt, ¶¶ 4, 7, 10.

[4] Exhibit A, Declaration of Lori Smith, ¶ 3.

[5] Exhibit A, Declaration of Lori Smith, ¶ 4.

which is submitted for approval.[6] If the purchase requisition is approved and includes work to be

performed by a contractor, PCA then issues a Purchase Order ("PO") to the chosen contractor.[7]

In October 2016, a leak in the Mill's CCL was discovered by Mill personnel. As a result

of this discovery, work order #1573059 ("Work Order") was prepared to "repair [a] leak in line

at the Clean Condensate Tank in Pulp Mill."[8] A bid for the repair work was obtained from Elite,

and PCA in due course issued a PO to Elite for repair of the CCL: PO # 215857 ("Elite Purchase

Order").

The Elite Purchase Order specifically referenced the CCL repairs first identified in the

Work Order ("1573059-clean condensate tank, brk"), along with other work arising from four

other work orders.[9] The face of the Elite Purchase Order explicitly identified PCA/Boise as

principal and statutory employer of Elite's employees under the LWCA, stating:

> THE LOUISIANA LEGISLATURE PASSED LEGISLATION
> ON JUNE 5, 1997, ACT 315, WHICH REQUIRES CONTRACTS
> TO RECITE IN WRITING THE "STATUTORY EMPLOYER"
> STATUS OF THE PARTIES HERETO. THE GOVERNOR
> SIGNED THE LEGISLATION ON JUNE 17, 1997, AND IT
> BECAME EFFECTIVE ON THAT DATE (THE "ACT").
> PCA/BOISE (AS PRINCIPAL EMPLOYER UNDER THE ACT)
> AND THE CONTRACTOR [ELITE] (AS DIRECT EMPLOYER)
> MUTUALLY AGREE THAT **IT IS THEIR INTENTION TO
> RECOGNIZE PCA/BOISE AS THE STATUTORY
> EMPLOYER OF THE CONTRACTOR'S [ELITE'S]
> EMPLOYEES UNDER THE ACT** WHILE CONTRACTOR'S
> [ELITE'S] EMPLOYEES ARE PROVIDING WORK AND/OR
> SERVICES TO PCA/BOISE UNDER THIS AGREEMENT. THE
> PARTIES AGREE THAT PCA/BOISE IS A STATUTORY

---

[6] Exhibit A, Declaration of Lori Smith, ¶¶ 4-5.

[7] Exhibit A, Declaration of Lori Smith, ¶ 4.

[8] Exhibit A, Declaration of Lori Smith, ¶¶ 6-8.

[9] Exhibit A, Declaration of Lori Smith, ¶ 9, Ex. A-2, p. 1 of 2.

EMPLOYER FOR PURPOSES OF THE ABOVE-REFERENCED ACT.[10] (Emphasis added).

The Elite Purchase Order also states "**This P.O. is issued subject to PCA's Terms and Conditions  http://wwww.packagingcorp.com/doing-business-with-pca."** (Emphasis added). The Terms and Conditions applied to Elite's performance of the PO and also explicitly state PCA is recognized as statutory employer of Elite's employees for work conducted pursuant to the Elite Purchase Order:

> The Louisiana Legislature passed legislation on June 5, 1997, Act 315, which requires contracts to recite in writing the "statutory employer" status of the parties hereto. The Governor signed the legislation on June 17, 1997, and it became effective on that date (the "Act"). **PCA (as principal employer under the Act) and the Seller [Elite] (as direct employer) mutually agree that it is their intention to recognize PCA as the statutory employer of the Seller's [Elite's] employees under the Act** while Seller's [Elite's] employees are providing work and/or services to PCA under this Agreement. The parties agree that PCA is a statutory employer only for purposes of the above-referenced Act.[11]

(Emphasis added). The Terms and Conditions further specify that "'PCA' and 'Seller' shall be deemed to include each party's respective subsidiaries and affiliates," thus also including PCA's wholly owned subsidiary, Boise, as statutory employer in addition to PCA.[12]

Elite performed much of the work under the Elite Purchase Order in November 2016, but did not perform the permanent repairs on the CCL identified on the Work Order. Temporary repairs were completed by PCA, thus allowing Elite's permanent repairs to be rescheduled to coincide with PCA's planned February 2017 Annual Shutdown. Accordingly, PCA issued an updated purchase order to Elite to complete the work detailed in Work Order #1573059 - the

---

[10] Exhibit A, Declaration of Lori Smith, ¶ 9, Ex. A-2.

[11] Exhibit A, Declaration of Lori Smith, ¶ 11, Ex. A-3.

[12] Exhibit A, Declaration of Lori Smith, ¶ 11, Ex. A-3.

permanent CCL repair (the "Updated Elite Purchase Order"). The Updated Elite Purchase Order again explicitly referenced Work Order #1573059, and described the work Elite was scheduled to complete: "repair piping to the Clean Condensate tank in the Pulp Mill."[13]

As with the Elite Purchase Order, the Updated Elite Purchase Order provided "this P.O. is issued subject to PCA's Terms and Conditions," which again, in relevant part, states:

> PCA (as principal employer under the Act) and the Seller [Elite] (as direct employer) mutually agree that it is their intention to recognize PCA as the statutory employer of the Seller's [Elite's] employees under the Act while Seller's [Elite's] employees are providing work and/or services to PCA under this Agreement.[14]

And again, the Terms and Conditions' reference to Seller or PCA included each of their subsidiaries and affiliates, which for PCA included Boise.

The Updated Purchase Agreement also noted "THIS PURCHASE ORDER IS GOVERNED BY A MASTER SERVICE AGREEMENT FOR CONSTRUCTION DATED 8/18/14 CURRENTLY IN EFFECT BETWEEN THE PURCHASE ORDER VENDOR AND PACKAGING CORPORATION OF AMERICA." The date reference is to a contract originally entered into between Boise and Elite which also contains statutory employer language covering work being done at the Mill by Elite. The identification of this older contract as one "between purchase order vendor and Packaging Corporation of America" recognizes the progressive efforts of the entity to transition from Boise to PCA and the Parties' understanding that  statutory employer protection was afforded to PCA/Boise.  As noted, the actual merger was finalized in June 2017. Thus, the Updated Elite Purchase Order repeated PCA and Elite's mutual intention

---

[13] Exhibit A, Declaration of Lori Smith, ¶¶ 11-12, Ex. A-4.

[14] Exhibit A, Declaration of Lori Smith, ¶ 12, Ex. A-4.

and recognition that PCA and its subsidiaries and affiliates, including Boise, were designated as statutory employer of Elite's employees.

## LAW AND ARGUMENT

### I.   Legal Standards

#### A.   Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable substantive law in the case.[15] A genuine issue of material fact exists if a reasonable jury could render a verdict for the non-moving party.[16]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact.[17] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[18] All facts and justifiable inferences are construed in the light most favorable to the non-movant.[19] However, if the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is

---

[15] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Minter v. Great American Ins. Co. of New York,* 423 F.3d 460, 465 (5th Cir. 2005).

[16] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Anderson*, 477 U.S. at 252.

[17] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

[18] *Id*.

[19] *Brumfield*, 551 F.3d at 326; *Anderson*, 477 U.S. at 255.

insufficient proof concerning an essential element of the non-moving party's claim.[20] The motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim.[21] Where no such showing is made, the moving party "is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[22]

The Fifth Circuit has further elaborated:

> This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. . . . [S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.[23]

Accordingly, when a summary judgment movant will not have the burden of proof on a claim at trial, he can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the non-movant's claim.[24] Once that is done, the non-movant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for

---

[20] *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008), citing *Celotex Corp.*, 477 U.S. at 325.

[21] *Condrey v. Sun Trust Bank of Georgia*, 431 F.3d 191, 197 (5th Cir. 2005).

[22] *Lujan v. Nat. Wildlife Federation*, 497 U.S. 871, 884, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) (quoting *Celotex Corp.,* 477 U.S. at 322-23).

[23] *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations and internal quotation marks omitted).

[24] See *Celotex Corp.*, 477 U.S. at 325.

trial.[25] Notably, "The determination of statutory employer status is a question of law for the court to decide."[26]

## B.   The Exclusive Remedy Provisions of the Louisiana Workers' Compensation Act

The Louisiana Workers' Compensation Act grants employees the guarantee of compensation for "personal injury by accident arising out of and in the course of his employment...."[27] – regardless of fault – but, in exchange, gives up those employees' potential tort claims against their employers. "The Act was a compromise between labor and industry pursuant to which laborers received guaranteed no-fault recovery and industry was relieved of the possibility of large damage awards in the tort system."[28] Louisiana Revised Statute 23:1032(A)(1)(a) provides:

> Except for intentional acts . . . , the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation . . . shall be exclusive of all other rights, remedies, and claims for damages….

The exclusivity of LWCA remedies extends beyond an employee's direct employer, to include all claims against an "employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine."[29]

---

[25] See *Celotex Corp.*, 477 U.S. at 324; *Little*, 37 F.3d at 1075.

[26] *Donahue v. Republic Nat'l Distrib. Co., LLC*, No. 16-13948, 2018 U.S. Dist. LEXIS 148080, at *6 (E.D. La. Aug. 30, 2018) citing *Louque v. Scott Equip. Co., LLC*, 212 So. 3d 1203, 1209 (La. App. 5 Cir. 2017); *St. Angelo v. United Scaffolding, Inc.*, 40 So.3d 365, 369 (La. App. 4 Cir. 5/19/10); *see also Whitehead v. Int'l Paper Co.*, No. 16-00176, 2018 U.S. Dist. LEXIS 200901, at *3 (W.D. La. 11/ 26 /18).

[27] La. R.S. 23:1031(A).

[28] *O'Regan v. Preferred Enters., Inc.*, 758 So. 2d 124, 136. (La. 3/17/00).

[29] *O'Regan*, 758 So.2d at 136; La. R.S. 23:1032(A)(1)(b): A "principal" is "any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was (footnote continued)

Specifically, the LWCA establishes a principal's solidary liability with the direct employer for a worker's LWCA compensation benefits and, concomitantly, grants the principal the same exclusive remedy protections based on a principal's status as "statutory employer":

> …when any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, **shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter** which he would have been liable to pay if the employee had been immediately employed by him; ….[30]

The LWCA provides two methods by which a principal is recognized as a statutory employer.[31] "First, the principal may contract to perform work and then subcontract all or a portion of that work to another (the 'two contract theory')."[32] "Second, the principal may enter a written contract 'recognizing' it as the statutory employer of the other party's employees."[33] In the second circumstance—the applicable provision here—a contract recognizing a statutory employer relationship creates "a rebuttable presumption" of such a relationship that "may be overcome only by showing that the work is not an integral part of or essential to the ability of the

---

engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof." *Id*; La. R.S. 23:1032(A)(2).

[30] La. R.S. 23:1061(A)(1) (emphasis added).

[31] *Wright v. Excel Paralubes*, 807 F.3d 730, 732 (5th Cir 2015); La. R.S. 23:1061.

[32] *Wright,* 807 F.3d 730, 732-33; La. R.S. 23:1061(A)(2).

[33] *Wright,* 807 F.3d at 733; La. R.S. 23:1061(A)(3).

principal to generate that individual principal's goods, products, or services."[34] The U.S. Fifth Circuit Court of Appeal has recognized that Louisiana courts have found that the statutory amendments in 1997 were intended to recognize a more liberal standard in favor of finding a statutory employer relationship."[35]

## II.   Plaintiff's Claims against PCA are Precluded by the Exclusivity Provisions of the LWCA

### A.     PCA is the Statutory Employer of Elite's Employees

The LWCA presumptively provides Plaintiff her exclusive remedy against PCA, as PCA was the statutory employer of Elite's employees at the time of the DeRidder Incident. Elite's work on the CCL identified in the Elite Purchase Order was the very work being performed above the FCT which exploded.

The Elite Purchase Order identifies PCA/Boise as the statutory employer of Elite's employees and incorporates PCA's Terms and Conditions, which also identify PCA and Boise as statutory employer. Likewise, the Updated Elite Purchase Order reiterates that PCA and Boise are considered the statutory employer of Elite's employees through incorporation of PCA's Terms and Conditions and reference to the prior contract which also explicitly provided statutory employer protection.

As the Louisiana Civil Code establishes, the "interpretation of a contract is the determination of the common intent of the parties,"[36] which is a question of law.[37] "When the

---

[34] La. R. S. 23:1061(A)(3); for purposes of Section 1061, "work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services."

[35] *Wright*, 807 F.3d at 733 (citations omitted).

[36] La. C.C. art. 2045.

[37] *Iteld v. Four Corners Const., L.P.,* 2012-1504 (La. App. 4 Cir. 6/5/13), 157 So.3d 702, 714.

words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[38]

The language on the face of the Elite Purchase Order explicitly states it is the parties' "intention to recognize PCA/Boise as the statutory employer of the [Elite's] employees under the Act while [Elite's] employees are providing work and/or services to PCA/Boise under this agreement."[39] Moreover, the Elite Purchase Order specifically incorporates PCA's Terms and Conditions by explicit reference: "This P.O. is subject to PCA's Terms and Conditions."[40]

PCA's Terms and Conditions repeat and confirm the parties recognize "PCA (as principal employer under the Act) and the Seller [Elite] (as direct employer) mutually agree that it is their intention to recognize PCA as the statutory employer of the Seller's [Elite's] employees under the Act while Seller's [Elite's] employees are providing work and/or services to PCA under this Agreement."[41] Additionally, the Terms and Conditions explicitly state that references to Seller (Elite) or PCA are to include their subsidiaries and affiliates, which for PCA includes Boise.[42] Thus, as explicitly stated on the face of the Elite Purchase Order, and reiterated by reference to and adoption of PCA's Terms and Conditions on the purchase orders, PCA has clearly established PCA/Boise was statutory employer of Elite's employee William Rolls, Jr.

---

[38] La. C.C. art. 2046.

[39] Exhibit A, Declaration of Lori Smith, ¶ 9, Ex. A-2.

[40] Exhibit A, Declaration of Lori Smith, ¶ 9, Ex. A-2.

[41] Exhibit A, Declaration of Lori Smith, ¶ 10, Ex. A-3.

[42] Exhibit A, Declaration of Lori Smith, ¶ 10, Ex. A-3, Sec. 1.

**B.      Elite's Work on the CCL was an Integral Part of, and Essential to, the Ability of PCA to Generate Goods, Products, and Services**

As the Declaration of Stacy Miller, Technical Manager, reveals, the PCA Mill manufactures containerboard.[43] A necessary part of the manufacturing process is the "pulping process" which converts the wood into wood pulp which is then used to make containerboard.[44] A by-product of this process is the discharge of foul condensate. The Mill recycles this for reuse by separating out the clean condensate and reusing it in the manufacturing process. The CCL is the line used to transport the clean condensate for use in the Mill's operations, making the manufacture more efficient and environmentally friendly as fresh water use is minimized.

As PCA/Boise is presumed to have been Rolls' statutory employer at the time of the DeRidder Incident,[45] Plaintiff faces the burden of showing otherwise— they must show the work Elite personnel was performing under the Purchase Order — repairing and resetting the CCL piping of the Mill—was not "an integral part" or an "essential part" of PCA's ability to generate goods, products, or services at the Deridder Mill. Plaintiff simply cannot do so.

Louisiana cases make it clear this is a very high bar for Plaintiff to meet.[46] For example, a plaintiff failed to rebut the presumption that a leak repair on a fire water system in an essentially

---

[43] Exhibit C, Declaration of Stacy Miller, ¶ 2.

[44] Exhibit C, Declaration of Stacy Miller, ¶ 3.

[45] La R.S. 23:1061(A)(3).

[46] The words "integral" and "essential" are expansively construed. Several courts have held even work outside an employer's core operations may still be essential or integral to its operations. *See*, *Everett v. Rubicon, Inc.*, 938 So.2d 1032, 1040 (La. App. 1 Cir., 2006) (breaking up concrete support pedestals surrounding a receiver that was used to collect waste chemicals was essential to a chemical manufacturer); *Schaefer v. Royal Prod. Co.*, No. 6:11-cv-00808, 2012 U.S. Dist. LEXIS 55361, at *12 (W.D. La. Apr. 19, 2012) (saltwater removal is an integral part of and essential to production of oil and gas); *Blakely v. CITGO Petroleum Corp.*, 737 F. Supp. 2d 599, 606 (W.D. La. 2010) (construction and environmental clean-up services are an essential part of operating a refinery); *Berthelot v. Murphy Oil, Inc.*, No. 09-4460, 2010 U.S. Dist. LEXIS 1140, at *22 (E.D. La. Jan. 7, 2010) (electric repairs to a (footnote continued)

abandoned "Recovery Boiler Building" was "integral" or "essential", as piping for the mill's fire protection system ran through the building and failure to repair the leak potentially affected the mill's ability to produce product.[47] The CCL used in the DeRidder Mill's operations was "an integral or essential part" of PCA's ability to generate goods, products and/or services.[48] Consequently, Plaintiff cannot overcome the presumption that PCA/Boise was Rolls' statutory employer.

### C.    Plaintiff has not Sufficiently Alleged any "Intentional Act."

Under Louisiana law, workers' compensation is an employee's exclusive remedy against his employer, statutory employer or fellow employees for work-related injury, unless his injury is proximately caused by the employer's intentional tortious act.[49] Louisiana courts, as well as federal courts sitting in diversity, have repeatedly and consistently stated the intentional act exception is to be narrowly interpreted,[50] and thus, the standard for prevailing on a claim of intentional tort under Louisiana law is extremely high.[51]

---

transformer was essential to an oil refinery); *Johnson v. Tenn. Gas. Pipeline Co.,* 99 F. Supp. 2d 755, 758 (E.D. La. 2000) (catering services are essential to an oil and gas compressor facility); *Oliver v. Day & Zimmermann*, Civ. A. No. 05-3072, 2006 U.S. Dist. LEXIS 6647, 2006 WL 508047, at *2 (E.D. La. Feb. 22, 2006) (security services are essential to an oil refinery's operations); *Hodges v. The Mosaic Co.,* Civ. A. No. 05-5201, 2007 U.S. Dist. LEXIS 49065, 2007 WL 2008503, at *3 (E.D. La. July 6, 2007) (installation of electrician scaffolding is essential to a chemical manufacturer's operations).

[47] *See Whitehead v. Int'l Paper Co.,* 2018 U.S. Dist. LEXIS 200901 (W.D. La. 11/27/18) (Court finding under the expansive meaning attributed to these terms by Louisiana federal and state courts, such a result would be error.).

[48] Exhibit C, Declaration of Stacy Miller, ¶¶ 2-6; Exhibit A, Declaration of Lori Smith, ¶¶ 6-12.

[49] *Reeves v. Structural Pres. Sys.*, 98-1785 (La. 03/12/99) 731 So.2d 208, 210; La. R.S. 23:1032(B).

[50] See, e.g., *Reeves*, 731 So.2d at 211-12 (citations omitted); *Cole v. State, Dep't of Public Safety & Corrections*, 01-2123 (La. 9/4/02), 825 So.2d 1134, 1140-41; *Snow v. Lenox Int'l*, 27,533 (La.App. 2 Cir. 11/1/95), 662 So.2d 818, 820; *Rogers v. La. Dept. of Corrections*, 43,000 (La.App. 2 Cir. 4/30/08), 982 *So. 2d 252*, 259, *writ denied*, 992 So. 2d 931 (La. 9/19/08); *Bridges v. Carl E. Woodward, Inc.,* 663 So.2d 458 (La.App. 4 Cir. 10/12/1995), *writ denied*, 666 So. 2d 674 (La. 1/26/96); *Guillory v. Domtar* (footnote continued)

Courts interpreting this narrow exception require a showing that not only the act—but the harm—was certain in advance of its occurrence. To avoid the LWCA's exclusivity requires proof that the person acting and causing injury must (1) "consciously desire the physical result of his act, whatever the likelihood of that result happening from his conduct" or (2) "know that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result."[52] "[O]nly where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional."[53] Thus, it is unsurprising there are few cases overcoming this threshold.

Nevertheless, it is not uncommon for plaintiffs to make unsupported, conclusory, and gratuitous allegations in their petitions in a transparent attempt to circumvent LWCA exclusivity. Almost all fail in this regard, and Plaintiff here is no exception. Plaintiff broadly alleges PCA knew its actions would cause the explosion and knew the explosion "would inevitably lead to" William Rolls Jr.'s death."[54] Following this broad allegation, Plaintiff lists subparagraphs A. –S., each of which contain a negligence-based and conclusory allegation prefaced by, "Knowingly and intentionally." But this repeated "Knowingly and intentionally" label is a mere diversion—one devoid of substance. Such bare-bones, unsupported, and wholly conclusory allegations are insufficient as a matter of law to overcome the LWCA's exclusivity provisions. Even if

---

*Indus., Inc.,* 95 F.3d 1320 (5th Cir. 1996); *Dark v. Georgia-Pacific Corp.,* 176 Fed. Appx. 569 (5th Cir. 2006).

[51] *Bonner v. Ga.-Pacific, LLC,* 2013 U.S. Dist. LEXIS 80514, at *7 (M.D. La. 6/6/13) (quoting *Wilson v. Kirby Corporation*, 2012 U.S. Dist. LEXIS 60544 (E.D. La. 5/1/12).

[52] *Bazley v. Tortorich*, 397 So.2d 475, 481 (La. 1981); see also *White v. Monsanto Co.*, 585 So.2d 1205, 1208 (La. 1991); *Reeves*, 731 So.2d at 211

[53] *White*, 585 So.2d at 1208.

[54] Pet. ¶ 133.

ultimately supported by evidence – such could only *potentially* support a claim of negligence, but fall far short of the "extremely high" burden of proof a worker must meet to establish the rare exception to the LWCA's exclusivity provisions.[55] Plaintiff's unsupported and conclusory allegations simply fail as a matter of law.

## CONCLUSION

PCA has established it was Decedent William Rolls Jr.'s statutory employer at the time of the DeRidder Incident. Plaintiff's unsupported and wholly conclusory allegations attempting to plead around the LWCA's high bar against tort claims fail on their face. As a consequence, the LWCA provides the exclusive benefits for his beneficiary, Plaintiff herein, and PCA respectfully requests this Court grant its motion for summary judgment on both issues and dismiss Plaintiff's claims against PCA in their entirety, with prejudice.

---

[55] "Louisiana courts narrowly construe the intentional act exception and have almost universally held employers and co-employees are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment." Reeves v. Structural Preservation Systems, 98-1795 (La. 3/12/99), 731 So.2d 208, 211-12, citing, Jasmin v. HNV Central Riverfront Corp., 94-1497 (La.App. 4 Cir. 8/30/94), 642 So.2d 311, *writ denied*, 647 So.2d 1110 (La. 1994) (failure to provide safe working environment in grain storage bin); Leger v. Hardy Rice Drier, Inc., 93-1512(La.App. 3 Cir. 6/1/94), 640 So.2d 650 (maintaining forklift in unsafe condition); Williams v. Gervais F. Favrot Co., Inc., 573 So.2d 533 (La.App. 4 Cir. 1991), *writ denied*, 576 So.2d 49 (La. 1991) (violations of OSHA and other accepted industry safety standards); Dycus v. Martin Marietta Corp., 568 So.2d 592 (La.App. 4 Cir. 1990), *writ denied*, 571 So.2d 649 (La. 1990) (allowing worker to operate dangerous equipment); Holliday v. B.E. & K. Constr. Co., 563 So.2d 1333 (La.App. 3 Cir. 1990) (knowledge that machine is dangerous and that its use creates a high probability that someone will eventually be injured from that use); Davis v. Southern Louisiana Insulations, 539 So.2d 922 (La.App. 4 Cir. 1989) (failure to provide ladders and scaffolding); Hood v. South Louisiana Medical Center, 517 So.2d 469 (La.App. 1 Cir. 1987) (failure to maintain safe working conditions); Taylor v. Metropolitan Erection Co., 496 So.2d 1184 (La.App. 5 Cir. 1986), *writ denied*, 497 So.2d 1388 (La. 1986) (failure to provide scaffold worker with safety belt); Snow v. Gulf States Utilities Co., 492 So.2d 31 (La.App. 1 Cir. 1986), *writ denied*, 496 So.2d 349 (La. 1986) (allowing worker to work too closely to energized wires); Jacobsen v. Southeast Distributors, Inc., 413 So.2d 995 (La.App. 4 Cir. 1982), *writ denied*, 415 So.2d 953 (La. 1982) (failure to provide specifically requested safety equipment); Cortez v. Hooker Chemical and Plastics Corp., 402 So.2d 249 (La.App. 4 Cir. 1981) (deficiently designed machinery and disregard of OSHA standards); Erwin v. Excello Corp., 387 So.2d 1288 (La.App. 1 Cir. 1980), *writs denied*, 396 So.2d 1242 and 397 So.2d 1363 (La. 1981).

Respectfully submitted,

BY: ___/s/ Jeffrey A. Riggs_____
        JENNIFER E. MICHEL (#18114)
        JEFFREY A. RIGGS (#17770)
        MICHAEL L. BARRAS (#30855)
        LEWIS BRISBOIS BISGAARD & SMITH LLP
        100 East Vermilion Street, Suite 300
        Lafayette, Louisiana 70501
        Telephone: 337-326-5777
        Facsimile: 337-504-3341
        *Counsel for Defendant, Packaging Corporation of America*

## CERTIFICATE OF SERVICE

I certify that on July 24, 2019, I electronically filed *Defendant Packaging Corporation of America's Motion for Summary Judgment with* the Clerk of Court using the CM/ECF system, which will automatically send notice of this filing to all counsel of record.

        _/s/ Jeffrey A. Riggs_____
        JEFFREY A. RIGGS