UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| AMY ROLLS | CASE NO. 2:18-CV-00188 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| PACKAGING CORP OF AMERICA INC. | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 82] filed by Packaging Corporation of America, Inc. ("PCA") and seeking dismissal of plaintiff's remaining claims under the intentional act exception to the Louisiana Worker's Compensation Act's exclusive remedies. Plaintiff opposes the motion. Doc. 89. The matter came before the court for oral argument on June 17, 2021, and the undersigned now issues this ruling.

### I.
### BACKGROUND

This litigation arises from an explosion at a paper mill owned by PCA in Deridder, Louisiana. Doc. 1, att. 7. A foul condensate tank exploded while employees of Elite Specialty Welding ("Elite"), including plaintiff's decedent William Rolls, were repairing a leak in the mill's clean condensate line on February 8, 2017. Doc. 1, att. 7; *see* doc. 52, att. 3, pp. 2–3. The explosion resulted in deaths and injuries, leading to several individual lawsuits against PCA. Plaintiff, Amy Rolls, filed one such suit in the 36th Judicial District Court, Beauregard Parish, Louisiana. Doc. 1, att. 7. The suit was removed to this court on the basis of diversity jurisdiction.

PCA moved for summary judgment on all claims in the suits brought by or on behalf of the Elite employees, on the grounds that it was the statutory employer of the Elite welders and that their claims were therefore preempted under Louisiana workers' compensation law. Plaintiffs opposed the motions, with the parties agreeing to reserve the issue of any intentional act exception to this preemption until after the court's ruling. The court granted summary judgment on the statutory employer issue and PCA now brings this second round of motions for summary judgment.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
### LAW & APPLICATION

Under the LWCA, workers' compensation is the exclusive remedy for employees injured on the job. La. Rev. Stat. § 23:1032(A)(1)(a). The only exception is when the injury is proximately caused by the employer's intentional act. *Id.* at § 1032(B); *see Reeves v. Structural Pres. Sys.*, 731 So.2d 208, 210 (La. 1999). In this context, "intentional act" means the same as "intentional tort" in reference to civil liability. *Bazley v. Tortorich*, 397 So.2d 475, 480 (La. 1981). Accordingly, the employer must have either "consciously desired the physical result of his act, whatever the likelihood of that result happening from his conduct" or "known that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Id.* at 481.

Plaintiffs argue that the intentional act exception applies because PCA knew that an explosion was substantially certain to occur when it allowed welding to take place near the foul condensate tank ("FCT") without first draining and purging that apparatus of foul condensate containing turpentine, a highly flammable substance that is a byproduct of the

-3-

papermaking process. In support of PCA's knowledge, they cite the fact that an explosion occurred under similar circumstances at another PCA mill in Wisconsin.[1]

That explosion occurred at PCA's fiberboard manufacturing facility in Tomahawk, Wisconsin, in 2008. It is among several accidents cited in a 2010 U.S. Chemical Hazard and Safety Investigation Board ("CSB") publication, "Seven Key Lessons to Prevent Worker Deaths During Hot Work In and Around Tanks." *See* doc. 90, att. 10, pp. 5–17. The CSB publication describes the Tomahawk incident as follows:

> Three workers were killed at the Packaging Corporation of America (PCA) fiberboard manufacturing facility while they were welding on a temporary metal clamp to stabilize a damaged flange connection. The flange was located on top of an 80-foot tall storage tank that contained recycled water and fiber waste.
> Facility personnel were unaware of the potential presence of flammable gas from the decomposition of the organic material in the tank, and combustible gas monitoring was not typically required or performed prior to starting work. At the time of the accident, three workers were on a catwalk above the tank; one began welding the flange into place when sparks from the welding ignited flammable vapors inside the tank. The resulting explosion ripped open the tank lid, knocking two of the workers to the ground 80 feet below. All three workers died of traumatic injuries. A fourth worker, who had been observing the work from a distance, survived with minor injuries.
> The CSB analysis of the tank contents determined that anaerobic bacteria had multiplied inside the tank and water recycle system over time, feeding on organic waste material. The bacteria likely produced hydrogen, a highly flammable gas, which ignited during the welding work. The CSB found that at the time of the incident, PCA workers and supervisors were unaware of the risks of flammable gas production from anaerobic bacteria growth. PCA did not perform a hazard analysis or recognize fiber waste tanks as potentially hazardous. Combustible gas monitoring was not required for the work.

---

[1] Plaintiffs in both remaining suits also argue that PCA has unreasonably curtailed their opportunity to conduct discovery. PCA's responses indicate that the party either fully responded to each request or had a good-faith basis for not doing so. Plaintiffs failed to bring a motion to compel or extend the discovery period in this matter. Accordingly, the court finds no basis for delaying ruling.

*Id.* at 11. Among the "Seven Key Lessons" drawn from these explosions, the CSB publication advised: "4. Test the Area – In work areas where flammable liquids or gases are stored or handled, drain and/or purge all equipment and piping before hot work is conducted." *Id.* at 7.

This publication was used as an exhibit at the deposition of Timothy Wohlers, who worked as recovery superintendent at the Deridder PCA mill at the time of the explosion. Wohlers testified that he was familiar with various kinds of tank explosions but had never heard of one originating in the FCT. Doc. 89, att. 3, p. 49. He did not recall ever seeing the CSB publication or learning the particulars of the Tomahawk incident. *Id.* at 51–52, 86–92. He denied discussing the FCT with anyone or being involved with the apparatus in any way. *Id.* at 81–82. PCA employees Gregory Smith and Jeff Fogelman, however, testified that Wohlers ordered that the tank not be fully drained before the "hot work" began, leaving ten feet of foul condensate and twenty feet of vapor in the tank. Doc. 90, att. 12, p. 17–19; doc. 90, att. 16, pp. 23–24. Stephanie Partridge, who was employed as an assistant superintendent at the mill, provided a declaration in which she stated that Wohlers told her after the explosion that he had not purged the tank before the hot work began because it would have been too expensive—"because it would have cost upward of $100,000.00 to clean it, that it was not due to be cleaned, and he couldn't justify that money in the budget." Doc. 9, att. 3, p. 3.

Plaintiffs' expert, Del Segura, also points out that the fiberglass pressure release valve on the tank was located 30 feet in the air, near where the Elite welders were working, and very likely to leak vapors. Doc. 96, att. 2, ¶ 14. He lists several employees at the

Deridder mill in February 2017—**not** including Wohlers—who should have known, based on their education and experience working with turpentine vapors, that an explosion was substantially certain to result from a failure to drain the tank during hot work. *Id.* at ¶¶ 14–15. He adds that "reports from the prior Tomahawk explosion would also provide clear evidence of the certainty of an explosion." *Id.* at ¶ 15. Plaintiffs' other expert, Gregg Perkin, agrees. Doc. 89, att. 6, ¶ 67.

From this evidence plaintiffs attempt to create a fact issue casting Wohlers's alleged decision not to drain and purge the tank within the intentional act exception. Yet they have not shown Wohlers's awareness of any facts giving rise to a substantial certainty that the explosion would follow. To the extent that they rely on PCA's collective knowledge based on the prior explosion or the expertise of other employees, Louisiana jurisprudence is clear that intent arises when "**the person** . . . knows that [the] result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Bazley*, 397 So.2d at 481. And even if plaintiffs could show that Wohlers was willfully blind to general risks of hot work and the desirability of eliminating all sources of vapor beforehand, they fail to show any likelihood of meeting the "substantial certainty" bar.

Plaintiffs rely, in chief, on a dissent in *Reeves v. Structural Preservation Systems*, 731 So.2d 208 (La. 1999) and the recent case of *Higgins v. Williams Energy Partner LP*, 266 So.3d 897 (La. 2019).[2] In the former, a worker was injured after he moved a sandblasting pot manually at his employer's direction and in violation of OSHA directives.

---

[2] They also cite a number of Louisiana appellate decisions, none of which vary the standards applicable here or show a basis for imputing "collective" knowledge to the individual decisionmaker at a facility.

The Louisiana Supreme Court held that this conduct, "while negligent or perhaps even grossly negligent," did not fall within the intentional act exception. 731 So.2d at 213. In her dissent, Justice Johnson observed that the court had cited another case where "substantial certainty" had been found based in part on the employer's knowledge of the risk and of previous accidents occurring with those same conditions. *Id.* at 214. Accordingly, she stated, "[t]he majority has held that in order for an employer to be substantially certain that injury will occur, another employee must have been previously injured due to the workplace practices of the employer." *Id.* The dissent's interpretation of the gap in the court's reasoning, however, is not a binding statement of Louisiana law and does not even stand for the proposition that "substantial certainty" will always be shown when that condition is satisfied. Moreover, in the case cited there was no question as to whether the individual decisionmaker was aware of the prior accident. *See Wainwright v. Moreno's, Inc.*, 602 So.2d 734 (La. Ct. App. 3d Cir. 1992).

*Higgins*, meanwhile, was a one-paragraph decision on a writ application from the summary dismissal of plaintiff's intentional act claims. There plaintiff was injured in an explosion at his job and alleged that his employer committed an intentional tort by failing to properly maintain a pipeline at the facility. The explosion resulted from the over-pressurization of an out-of-service reboiler. Plaintiff introduced several pieces of evidence pointing to the knowledge of various employees that the reboilers posed a danger, including multiple warnings made to the defendant regarding conditions at that facility. *See Higgins v. Williams Energy Partner, LP*, 267 So.3d 1133, 1136–38 (La. Ct. App. 1st Cir. 2018). The appellate court affirmed the district court's summary dismissal, noting that "it is clear

that the defendant's management was aware that the blocked reboiler was a hazard, but it is not evident that they were substantially certain that the chemical explosion was to occur from that hazard." *Id.* at 1141. The Louisiana Supreme Court, however, granted plaintiff's writ application and reversed the judgment in an unpublished one-paragraph decision, stating generally that "there remain genuine issues of material fact as to whether the defendant is liable to this plaintiff as the result of an intentional act . . . ." *Higgins*, 266 So.3d at 897.

The decision on the writ application in *Higgins* carries no precedential value. Nor are the facts of the underlying case analogous to the evidence presented in this matter: in *Higgins*, the plaintiff presented evidence of the management team's awareness of specific dangers at the facility where he was injured and decisions regarding the reboiler that exploded. Here, in contrast, it was Wohlers who allegedly failed to take appropriate action and there is no evidence that he knew of the specific dangers that plaintiffs claim caused this explosion.

The Louisiana Supreme Court has made clear that, "[e]ven if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character." *Reeves*, 731 So.2d at 211. PCA has shown that, to the extent a root cause of the explosion can be determined, there is no evidence that it was the result of any intentional act by a PCA employee—and that the controlling Louisiana jurisprudence provides no basis for finding

an "intentional act" based on circumstances known to those other than the individual. With all evidence viewed in the light most favorable to plaintiffs, the claims against PCA must be dismissed due to plaintiffs' failure to submit significant probative evidence showing that the accident resulted from anything more than the negligence or aggravated negligence of any individual for whom PCA is answerable.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 82] will be **GRANTED** and all remaining claims in this matter will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on this 24th day of June, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**